# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JHERI MATTHEWS,  )
                     )
       Petitioner,   )     Civil Action No. 17-916
                     )     Magistrate Judge Maureen P. Kelly
         v.       )
                     )
ROBERT GILMORE, Superintendent of SCI-  )
Greene, ATTORNEY GENERAL OF THE  )
COMMONWEALTH OF PENNSYLVANIA,  )
and DISTRICT ATTORNEY OF  )
ALLEGHENY COUNTY,  )
                     )
       Respondents.   )

## OPINION AND ORDER

Jheri Matthews ("Petitioner") is a state prisoner, proceeding pro se, who has filed an Amended Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Amended Petition"). ECF No. 21. By means of the Amended Petition, he seeks to challenge his conviction for criminal conspiracy to commit homicide.

For the reasons that follow, the Petition will be denied because none of the eight grounds for relief merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Amended Petition debatable, a certificate of appealability will also be denied.

1

# I. FACTUAL BACKGROUND

The Pennsylvania Superior Court in a Memorandum, dated May 25, 2017, addressing

Petitioner's appeal in his first (as deemed under state law) Post Conviction Relief Act ("PCRA")

proceedings, recounted the factual history of the case as follows:

> Appellant was charged with homicide and criminal conspiracy arising from the shooting death of Keith "Spud" Watts outside Carrick High School on March 16, 2005. The Commonwealth presented extensive circumstantial evidence that Appellant and his co-defendants, Shawn Wilmer and Howard Kelley, conspired to kill the victim because they believed that the victim had shot Appellant in the neck nine months earlier, in June 2004.

> The web of evidence to support this conclusion may be summarized as follows. One day after Appellant was shot, co-defendant Kelley and two other men (Nathan Walters and Walter Hill) drove around looking to get revenge on the victim. All three men opened fire on a group of people standing on the street, but the victim was not injured at that time. On February 9, 2005, two people opened fire on the house where the victim and his grandmother resided. Appellant and Kelley talked about how Appellant had shot the victim, but missed.

> Finally, the Commonwealth presented evidence that at 1:45 p.m. on March 16, 2005, co-defendants Wilmer and/or Kelley drove up in a Hyundai Sonata, opened fire on the victim, and killed him as he was sitting in the driver's seat of his vehicle. Seven shell casings were recovered from the Sonata. The evidence did not establish that Appellant was the shooter, and did not conclusively establish that he was in the Sonata at the time. On the other hand, the Commonwealth showed that a receipt from a McDonald's restaurant bearing Appellant's fingerprint was found in the Sonata bearing a time-stamp of noon on March 16, less than two hours before the shooting.

> Moreover, after the shooting, Walters met with all three co-defendants. According to Walters, co-defendant Kelley said, "... we got that [n*****]," while Appellant nodded his head. At that time, co-defendant Kell[e]y argued with co-defendant Wilmer about whose gun actually fired the fatal shot. Finally, according to Davis, co-defendant Kelley talked about how Kelley and Appellant were lying in wait for the victim, discussing whether the safety on the rifle was on or off.

Com. v. Matthews, 1135 WDA 2016, 2017 WL 2297586, at *1 (Pa. Super. May 25, 2017) (quoting

Com. v. Matthews, 986 A.2d 1259, *1–3 (Pa. Super. 2009) (unpublished memorandum) (footnotes

omitted)); ECF No. 35-2 at 202 – 03.

## II. PROCEDURAL HISTORY

### A. State Court

The Pennsylvania Superior Court, in its Memorandum, dated May 25, 2017, recounted the

procedural history of the case in the state courts as follows:

> A jury acquitted Appellant of murder, but convicted him of
> conspiracy. On November 5, 2007, Appellant was sentenced to 20 to
> 40 years' imprisonment.
>
> *Commonwealth v. Matthews*, 986 A.2d 1259, *1–3 (Pa. Super. 2009) (unpublished
> memorandum) (footnotes omitted).[1]
>
> ---
>
> [1] The jury found both co-defendants guilty of criminal homicide and
> conspiracy. The trial court sentenced them both to life in prison.
>
> Appellant timely filed an appeal to this Court, in which he claimed that the
> trial court abused its discretion in not granting his continuance request and in which
> he challenged the sufficiency of the evidence supporting his conspiracy conviction.
> Finding no merit to either claim, this Court affirmed on September 30, 2009.
> *Matthews, supra.*
>
> On February 25, 2010, Appellant *pro se* and timely filed a petition for
> collateral relief. The PCRA court appointed counsel; PCRA counsel filed an
> amended petition on May 27, 2011; and the Commonwealth filed its answer on June
> 6, 2011. Thereafter, the PCRA court granted Appellant the right to file a *nunc pro
> tunc* petition for allowance of appeal. PCRA counsel did so, and our Supreme Court
> denied allowance of appeal on March 27, 2012. *Commonwealth v. Matthews*, 40
> A.3d 1235 (Pa. 2012), *cert. denied*, 133 S. Ct. 270 (October 1, 2012).

Appellant pro se filed another PCRA petition on August 29, 2013. The PCRA court appointed counsel, and, on September 24, 2014, PCRA counsel filed a "no-merit" letter and motion to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On January 9, 2015, the PCRA Court sent Appellant Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition. Appellant responded by seeking leave to amend his petition and subsequently filed an amended petition on June 29, 2015. The PCRA court again sent Rule 907 notice to Appellant on December 8, 2015, and Appellant again filed a response. By order entered June 2, 2016, the PCRA court dismissed Appellant's petition. This timely appeal follows. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

> Appellant raises the following issues:
>
> 1. The [PCRA] court erred in dismissing [Appellant's] claim that trial counsel [ ] rendered ineffective assistance by not impeaching Nathan Walter with his prior inconsistent statement.
>
> 2. The [PCRA] court erred in dismissing [Appellant's] claim that trial counsel rendered ineffective assistance by failing to file a timely severance motion.

Appellant's Brief at 4.

Com. v. Matthews, 2017 WL 2297586, at *1 – 2 (some footnotes omitted); ECF No.

35-2 at 203 – 05.

The Superior Court affirmed the denial of the PCRA Petition, addressing both claims ultimately on the merits but also finding the second claim regarding trial counsel's ineffectiveness for failing to seek severance to have been waived. After the Superior Court affirmed the denial of PCRA relief, Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania. ECF No. 35 at 9.

4

**B. Federal Court**

Petitioner was granted leave to proceed in forma pauperis, ECF No. 2, and the original

Petition ("Original Petition") was formally docketed on July 18, 2017. ECF No. 3. In the Original

Petition, Petitioner only raised two Grounds for Relief:

**GROUND ONE:** Sixth Amendment of the United States Constitution.

ECF No. 3 at 6.

**GROUND TWO:** Sixth Amendment of the United State [sic] Constitution; Pa. R. Crim. P. 578(2) and 579(A).

Id. at 8.

Petitioner described the supporting facts for Ground One as follows:

Trial counsel Michael Foglia was cognizant of Nathan Walters' prior statement that was inconsistent from his trial testimony. During cross-examination he had ample time to impeach Walters and present to the record new material evidence the jury never heard. Said evidence went from me being a bystander to a conversation to me agreeing to an unlawful agreement which Mr. Foglia had (14) fourteen months prior to trial.

Id. at 8.

Petitioner described the supporting facts for Ground Two as follows:

Trial counsel, Michael Foglia had enough time to request for a severance when he filed an Omnibus Pretrial Motion seeking the identity of a confidential informant; but yet when the time to properly request for a severance expired he made a [sic] oral request knowing it's [sic] denial would be forth coming.

Id.

5

On July 25, 2017, Petitioner filed a Motion for Leave to Amend the Original Petition. ECF No. 4. On July 26, 2017, the Court granted the Motion for Leave to Amend and ordered Petitioner to file his Amended Petition no later than September 22, 2017. What followed that order was the filing of six motions by Petitioner, which sought, in effect, extensions of time to file the Amended Petition. ECF Nos. 10, 11, 13, 15 and 17. Finally, Petitioner's Amended Petition, ECF No. 21, was formally docketed on February 13, 2018 more than six months after the Original Petition was filed.

In the Amended Petition, Petitioner raised the following eight Grounds for Relief:

**GROUND ONE:** Trial counsel provided ineffective assistance because trial counsel did not impeach Nathan Walters with Walters' prior inconsistent statement.

Id. at 5.

**GROUND TWO:** Trial counsel provided ineffective assistance given trial counsel did not question Walters about Walters' out-of-court statement.

Id. at 7.

**GROUND THREE:** Trial counsel is ineffective since trial counsel did not file a notice of alibi defense and did not request an alibi jury instruction.

Id. at 8.

**GROUND FOUR:** Trial counsel is ineffective for failing to request Petitioner's nickname (Pound) be redacted from codefendant Kelley's confession to Commonwealth witness Shawn Davis. Or in the alternative, trial counsel was ineffective for not requesting that the jury be instructed not to use the confession against Petitioner.

Id. at 10.

Ground Five[:] Trial counsel is ineffective for not objecting to Commonwealth witness Shawn Davis' testimony that Petitioner attempted to shoot the victim in the

6

past. The basis for the objection is that the testimony is hearsay and violates Petitioner's confrontation rights.

<u>Id.</u> at 12.

>Ground Six[:] Trial counsel is ineffective for not objecting to the prior bad acts jury instructions on the basis that the instructions did not explain, exactly, the purpose of the prior bad acts – and what prior bad acts were admissible and inadmissible against Petitioner.

<u>Id.</u>

>Ground Seven[:] Trial counsel is ineffective since trial counsel did not object to the evidence that the guns used to kill the victim were used in the Jack Woods shooting.

<u>Id.</u> at 13.

>Ground Eight[:] The cumulative prejudice of the errors made by trial counsel, -- i.e., grounds one through seven – creates a reasonable probability that the outcome of the trial would have been different absent trial counsel's errors.

<u>Id.</u>

After being granted two extensions of time to file an Answer, Respondents filed their Answer to the Amended Petition on May 4, 2018, contending that all of the eight Grounds for Relief are without merit and, alternatively, that six of the eight Grounds are time barred. ECF No. 35. Respondents attached to their Answer, copies of much of the state court record. Respondents also caused the original state court record to be transmitted to this Court.

Petitioner then filed a motion for extension of time to file a Reply to the Answer, ECF No. 36, which the Court granted and gave him until November 15, 2018 to file his response. On September 13, 2018, Petitioner filed a Motion for Appointment of Counsel, ECF No. 38, which the

Court denied. Petitioner then filed a second motion for extension of time to file his Reply to the Answer, ECF No. 40, which the Court again granted and gave Petitioner until December 21, 2018 to file his Reply. ECF No. 41. On December 21, 2018, Petitioner filed a third motion for extension of time to file his Reply, ECF No. 42, which the Court granted, ECF No. 43, and gave Petitioner until January 15, 2019 to file his Reply. Finally, Petitioner filed a brief three page Reply on January 15, 2019. ECF No. 44.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 27 and 32.

## III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that

Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)). The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dept. of Corrections, 834 F.3d 263, 368 (3d Cir. 2016) (en banc) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further

explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Moreno v. Ferguson, CIV. A. No. 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), appeal filed, 19-3777 (3d Cir. Dec. 6, 2019). This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, 2:07-CV-00021, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the*

10

*Supreme Court of the United States.'* 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law: We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pa. Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

In Ground One of the Amended Petition, Petitioner claims that his trial counsel provided ineffective assistance by failing to impeach prosecution witness Nathan Walters with his allegedly prior inconsistent statement.

Petitioner did raise this Ground for Relief in the pro se PCRA Petition but his PCRA trial counsel filed a *Turner-Finley* no-merit letter. Both the PCRA trial court and the Superior Court on appeal denied Petitioner relief on this Ground. Specifically, the Superior Court reasoned as follows:

Appellant first claims that trial counsel was ineffective for failing to impeach Nathan Walters with a prior inconsistent statement. In making his argument, Appellant relies on a statement that Walters made to police in which he described Appellant's participation in the conversation between Wilmer and Kelley as, "basically listening, determining what everybody was saying. He didn't say much." In contrast, as summarized above, Walters testified that Appellant was nodding in agreement. According to Appellant, had trial counsel cross-examined Walters regarding this prior inconsistent statement,

> [he] would not have had to get on the witness stand and contradict that evidence in order to shine light on dark areas in his case. Those dark areas being the unimpeached testimony from Walters who was the only Commonwealth witness to accuse [Appellant] of being a conspirator in this crime. In [***Commonwealth v. Lively***, 610 A.2d 7 (Pa. 1992)], the third witness's statement was properly admitted once the witness testified differently at trial.

> In [Appellant's] case, all [trial counsel] had to do was confront Walters about why his testimony was different from his prior statement, admit it, and that would of [sic] made Walters' credibility unbelievable [sic]. He would of [sic] dug his own grave explaining why his story changed squarely on the requirements needed to fulfill a conspiracy against [Appellant] and that would have been effective assistance.

> The [PCRA] Court had a chance to make it right by agreeing with [Appellant] that impeaching Walters was in [Appellant's] best interest and that [trial counsel] was ineffective for not admitting Walters' prior inconsistent statement as substantive evidence once Walters testified differently but they didn't ... [sic] they just couldn't make it right.

Appellant's Brief at 9.

The PCRA court found no merit to Appellant's claim, given Appellant's testimony at trial:

> [Appellant's] claim that [trial] counsel was ineffective for not seeking the admission of Nathan Walters' inconsistent statement as evidence will be dismissed because counsel had a reasonable basis for not doing so in that this witnesses' out of [court] statement that [Appellant] "didn't say much" while present in the attic with the co-defendant[s] contradicted [Appellant's trial] testimony that he was not, in fact, present at all. Counsel clearly has a reasonable basis not to present testimony that would have contradicted [Appellant's] own testimony[.]

Pa.R.Crim.P. 907 Notice, 12/8/15, at 1. Our review of the record supports that PCRA court's conclusion.

Moreover, our review of the record refutes Appellant's assertion that Walters was the only Commonwealth witness to implicate Appellant as co-conspirator. *See, e.g.*, N.T., 5/1/07, at 672 (Commonwealth witness Shawn Davis testifying that after the shooting, co-defendant Kelley informed him that Kelley and Appellant waited for victim to leave the high school).

Finally, Appellant cannot establish that he was prejudiced by trial counsel's inaction, given the other circumstantial evidence supporting the conspiracy. As we stated in rejecting Appellant's sufficiency challenge on direct appeal:

> In the instant case, Appellant argues that the only evidence linking him to the killing was the McDonald's receipt and the fact that he nodded while his co-defendants stated that they had shot the victim.

> We disagree. As noted above, the Commonwealth presented extensive circumstantial evidence from which the jury could conclude that Appellant entered into a conspiracy with his co-defendants to kill the victim in retaliation for shooting Appellant. Again, Kell[e]y and two other men first tried to retaliate against the victim shortly after Appellant was shot. Later, Appellant and Kell[e]y shot at the victim's house. A jury could conclude beyond a reasonable doubt that on the

13

> final attempt, Appellant was in the shooters' vehicle shortly before the
> murder, had known about the killing, was at the scene of the crime,
> and had agreed to the murder. This web of evidence was sufficient to
> prove the elements of conspiracy.

*Matthews*, *supra*, unpublished memorandum at 7–8. Thus, for all of these reasons, Appellant's first claim of ineffectiveness fails.

Com. v. Matthews, 2017 WL 2297586, at *3–4; ECF No. 35-2 at 206 – 09.

Petitioner fails to argue yet alone persuade this Court as is his burden that the foregoing disposition is contrary to or an unreasonable application of United States Supreme Court precedent on ineffectiveness.

### 1. The Superior Court's decision is not contrary to <u>Strickland.</u>

In addressing the claim of trial counsel's alleged ineffectiveness raised in Ground One, both the PCRA trial court and the Superior Court, applied the state court three-pronged test for ineffective assistance of counsel ultimately derived from Com. v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). Com. v. Matthews, 2017 WL 2297586, at *2; ECF No. 35-2 at 205 – 06.

The Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland in the sense of being a wrong rule of law. Hence, Petitioner cannot show that the Superior Court's disposition of Ground One is contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law. Nor has Petitioner shown that the Superior Court's disposition is contrary to United States Supreme Court precedent in the second sense, i.e., he fails to point to a case decided

14

by the United States Supreme Court where the facts are indistinguishable from his case but where the state court reached an outcome different from the outcome reached by the United States Supreme Court. Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, Civ. A. No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008); West v. Foster, 2010 WL 3636164, at *10.

### 2. The Superior Court did not unreasonably apply Strickland.

Moreover, Petitioner has failed to show that the Superior Court's decision, was an unreasonable application of United States Supreme Court precedent on ineffective assistance of counsel. Petitioner cites to no Supreme Court case law that he claims requires a different outcome or which the Superior Court unreasonably applied.

In Strickland, the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Williams v. Taylor, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the United States Court of Appeals for the Third Circuit has

explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the state courts addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

16

*Premo v. Moore*, 562 U.S. 115, 122 - 123 (2011) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011)). <u>Accord</u> <u>Grant v. Lockett</u>, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), <u>rejected on other grounds by</u>, <u>Dennis</u>, 834 F.3d at 293.

The Superior Court essentially found that Petitioner failed to carry his burden to establish deficient performance on the part of his trial counsel because the PCRA trial court found that trial counsel had a reasonable basis for not impeaching Nathan Walters' alleged out of court statement, namely, that to do so would be to emphasize evidence that would impeach Petitioner's testimony that Petitioner was not present in the attic at the time Walters said he was. And the Superior Court agreed with the PCRA trial court's reasoning. In addition, the Superior Court found that Petitioner also failed to establish prejudice with respect to trial counsel's alleged failure to impeach Walters with his alleged prior inconsistent statement.

Viewing the Superior Court's disposition of this claim through the doubly deferential lens of the AEDPA, we have no hesitancy in concluding that Petitioner fails to carry his burden to persuade this Court that Superior Court's disposition was unreasonable, yet alone even incorrect. Accordingly, Ground One fails to merit federal habeas relief.

**B. Ground Two Fails to Merit Relief.**

In Ground Two, Petitioner complains about essentially the same conduct by counsel that he claimed in Ground One, concerning his trial counsel's alleged failings regarding the testimony of Walters and the allegedly prior inconsistent account Walters gave of the Petitioner's behavior in the attic. In fact, Respondents point out that "[t]he respondents would submit that this claim is essentially identical to amended petition claim 1. The only difference is the substitution of the word 'question' for 'impeach.' Those two things are, by and large, the same. The procedural posture of this claim is therefore identical to amended petition claim 1." ECF No. 35 at 41. Therefore, for the same reasons that Ground One failed to merit any federal habeas relief, Ground Two similarly fails.

**C. Grounds Three to Eight are Time Barred.**

In their Answer, Respondents asserted that Grounds Three to Eight are time barred. Based on this Court's thorough review, we agree.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because the Petition in this case was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

The AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction became final. Specifically, the AEDPA provides that:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents correctly concede that Petitioner's Original Petition was timely filed. In effect, based upon the prisoner mailbox rule, the Petition is deemed to have been filed on the date he signed the Original Petition as well as the IFP Motion, which was June 22, 2017. ECF No. 1 at 1; ECF No. 3 at 10.

The AEDPA statute of limitations as to the Original Petition is properly calculated as follows. Petitioner's conviction became final on October 1, 2012, the date on which the United States Supreme Court denied Petitioner's Petition for Writ of Certiorari in the direct appeal proceedings. ECF No. 35 at 20. Schlager v. Superintendent Fayette SCI, 789 F. App'x 938, 940 (3d Cir. 2019) ("The judgment became final on April 20, 2009, when the U.S. Supreme Court denied his petition for writ of certiorari[.]"). Petitioner did not file his first PCRA Petition until August 29, 2013. Hence, from October 1, 2012, to August 29, 2013, a total of 332 days of the AEDPA's 365 days were used up, leaving only 33 days remaining for the AEDPA statute of limitations. The Superior Court affirmed the denial of Petitioner's PCRA Petition on May 25, 2017 and Petitioner did not thereafter file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. Accordingly, Petitioner's PCRA Petition ceased to be pending as of June 24, 2017, or 30 days after the Superior Court affirmed the denial of the PCRA Petition, which is the time period permitted by Pennsylvania state rules for the filing of a Petition for Allowance of Appeal. Griffin-El v. Diuglielmo, CIV. A. 08-1018, 2009 WL 4348837, at *11 (W.D. Pa. Dec. 1, 2009) ("The pro se PCRA petition remained pending only until 30 days after November 20, 2006, the date whereon the Superior Court dismissed his PCRA appeal for failure to file a brief, where Petitioner did not file a PAA to the Pennsylvania Supreme Court."); Young v. Lawler, CIV.A. 07–4171, 2008 WL 1984059, at *4 (E.D.Pa. May 2, 2008) (the 30 day period for filing allocatur to Pennsylvania Supreme Court tolled the running of AEDPA's statute of limitations even if no allocatur petition was filed). As such, Petitioner had 33 remaining days following June 24, 2017 (which is the date when

Petitioner's PCRA Petition was deemed to have no longer been pending), or until July 27, 2017 to file a federal habeas petition.

After seeking and being granted numerous extensions, Petitioner did not file his Amended Petition until at the earliest, February 5, 2018, the date on which he signed the Amended Petition. ECF No. 21 at 18. However, Petitioner's AEDPA statute of limitations ran out as July 27, 2017.

Because Petitioner's Amended Petition was filed beyond July 27, 2017, any claims contained in the Amended Petition, which were not contained in the Original Petition are not timely filed. This is so unless the new claims in the Amended Petition, which were not raised in the Original Petition, "relate back" to the Original Petition. Fed. R. Civ. P. 15. The United States Court of Appeals for the Third Circuit has explained:

> AEDPA imposes a one-year statute of limitations on state inmates seeking to file habeas claims in federal court. 28 U.S.C. § 2244(d)(1). If an inmate complies with this deadline, the Federal Rules of Civil Procedure allow him, like other any civil litigant, to later amend his petition to add additional claims so long as those additional claims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed R. Civ. P. 15(c)(1)(B). Here, it is not contested that Wilkerson filed a timely habeas petition raising his double jeopardy claim but did not file the "Amended Petition in Support of Memorandum of Law" that added his *Apprendi* claim until well after the one-year mark. Supp. App. 36. The timeliness of Wilkerson's *Apprendi*-related claims therefore depends on whether they "relate back" to the double jeopardy claim in his original habeas petition.

Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 236–37 (3d Cir. 2017) (footnotes omitted).

The Third Circuit in <u>Wilkerson</u> then explained the proper analysis to determine whether

"claims arise out of the conduct, transaction, or occurrence set out—or attempted to be set out—in

the original pleading." The Third Circuit stated:

> In *Mayle v. Felix*, the Supreme Court addressed how this relation back rule applies in
> the context of a habeas petition. 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582
> (2005). The petitioner in *Mayle* had filed a petition asserting that his Sixth
> Amendment right to confront adverse witnesses had been violated when the trial
> judge admitted certain out-of-court statements made by a jailhouse informant. *Id.* at
> 650–51, 125 S.Ct. 2562. The petitioner then sought to amend his petition to add
> another claim—this time that his Fifth Amendment right against self-incrimination
> had been violated when the trial judge allowed the prosecutor to introduce statements
> the petitioner had made during a pretrial police interrogation. *Id.* at 651–52, 125 S.Ct.
> 2562. The Supreme Court rejected this amendment as time barred, explaining that
> while both claims related to the admission of pre-trial statements, those statements
> "were separated [from each other] in time and type," *id.* at 657, 125 S.Ct. 2562, and
> the petitioner had thus defined "ar[ising] out of the conduct, transaction, or
> occurrence" for relation back purposes at "too high a level of generality," *id.* at 661,
> 125 S.Ct. 2562 (internal quotation marks omitted). The Court elaborated that two
> claims merely arising from the same "conviction or sentence" cannot be enough to
> satisfy the relation back standard and that, in order to properly relate to one another,
> the claims in the amendment and the claims in the original petition must be "tied to a
> common core of operative facts." *Id.* at 657, 664, 125 S.Ct. 2562.

> Wilkerson urges that his claims meet this standard because both his double jeopardy
> claim and his *Apprendi* claim "arise from ... the jury instructions, the jury verdict and
> the sentence imposed," Second Step Br. 49, and "both hinge upon [a] serious bodily
> injury finding," Fourth Step Br. 15. This explanation falls short. Like the petitioner
> in *Mayle*, Wilkerson defines the "same conduct, transaction, or occurrence"
> necessary for relation back at "too high a level of generality." *Mayle*, 545 U.S. at
> 661, 125 S.Ct. 2562 (internal quotation marks omitted). To say that the claims relate
> to the same "jury verdict and sentence imposed" is just another way of couching the
> argument explicitly rejected in *Mayle*—that relation back can be satisfied simply
> because the amendment and petition pertain to the same "conviction or
> sentence." *Id.* at 657, 125 S.Ct. 2562. Although both claims in this case also
> coincidentally relate to the jury charge and involve the term "serious bodily injury,"
> these common features are not enough to make the claims arise from the same

"operative facts" when the problems asserted with the jury charge are entirely unrelated, *id.* at 664, 125 S.Ct. 2562.

The operative fact underlying Wilkerson's double jeopardy claim is that, for the aggravated assault charge, the jury instruction stated that Wilkerson could be found guilty for "caus[ing] or attempt[ing] to cause serious bodily injury," App. 587, without specifying that, if he was also convicted of attempted murder, his shooting of Nasir Hill could not be the act that satisfied that requirement. The operative facts for Wilkerson's *Apprendi*-related claims, on the other hand, are that for the attempted murder charge, the jury was never asked to determine whether Wilkerson inflicted serious bodily injury at all, and his counsel did not object on this ground at sentencing or raise the issue on direct appeal. These claims are not the same in "time and type," *Mayle*, 545 U.S. at 657, 125 S.Ct. 2562, but are distinct claims with their own factual predicates that happen to involve the presence or absence of the phrase "serious bodily injury" in the jury instructions. For these reasons, Wilkerson's untimely *Apprendi* claim and related ineffective-assistance-of-counsel claims do not relate back to his original petition for habeas corpus, and these claims are therefore barred by AEDPA's one-year statute of limitations.

Wilkerson, 871 F.3d at 237–38 (footnotes omitted).

Of crucial importance to our case under the foregoing Wilkerson analysis is the rule that the habeas petitioner bears the burden of proof to show that the newly added claims arise out of the same conduct, transaction, or occurrence or "operative facts" set out —or attempted to be set out—in the original pleading. Moore v. Horel, CIVS-02-0007, 2009 WL 2513920, at *5–6 (E.D. Cal. Aug. 17, 2009) (in a Section 2254 case, the Court held "it is petitioner's burden to establish that the requirements for relation back under Rule 15(c) have been met."), *report and recommendation adopted*, 2009 WL 3379103 (E.D. Cal. Oct. 16, 2009). Accord Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003) ("In order to change 'the party or the naming of the party against whom ... claim[s][are] asserted,' both Rule 15(c)(2) and (c)(3) must be satisfied. Fed.R.Civ.P. 15(c)(3).

Therefore, a plaintiff must show that: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading...."); <u>Covey v. Assessor of Ohio Cty.</u>, 666 F. App'x 245, 248 (4th Cir. 2016) ("[W]hen relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied."); <u>Averill v. Jones</u>, CV 12-599, 2019 WL 3804686, at *3 (D. Del. Aug. 13, 2019) ("As an initial matter, courts have consistently held that the burden of proof for relation back falls upon Plaintiff. ").

While it is true that Petitioner filed a Reply to the Answer and did attempt to address the timeliness issue, Petitioner's attempt is wholly inadequate and unsuccessful. Petitioner's complete analysis on the issue of timeliness is as follows: "Grounds three though eight are timely filed and were properly amended with Rule 15 of the Federal Rules of Civil Procedures [sic]." ECF No. 44 ¶ 5. This conclusory assertion without any analysis of the pertinent questions is entirely unpersuasive and inadequate to carry Petitioner's burden of showing that the newly added claims arise out of the same conduct, transaction, or occurrence or "operative facts" set out — or attempted to be set out — in the original pleading. <u>Ladyansky v. Cooper Wheelock, Inc.</u>, 11-CV-102, 2012 WL 1071187, at *3–4 (E.D. Pa. Mar. 29, 2012) ("Plaintiffs did not address the three requisite conditions of Rule 15(c)(1)(C), despite having the burden of establishing that relation back is appropriate.").

Accordingly, because Petitioner fails to carry his burden to show that Grounds Three to Eight relate back, they are clearly time-barred and cannot now serve as a basis for federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

For the reasons set forth herein, the Amended Petition will be denied and a certificate of appealability will be denied and the following order is entered:

### ORDER

**AND NOW,** this _2nd_ day of March 2020, it is hereby **ORDERED** that for the reasons set forth herein, the Amended Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:     All counsel of record via CM-ECF


       JHERI MATTHEWS
       HH-0417
       S.C.I. Greene
       175 Progress Drive
       Waynesburg, PA 15370